Thank you, Your Honor. With the court's permission, I'd like to reserve two minutes for rebuttal. Okay, and you can see the clock. I can. Thank you, Judge. Mr. Hernandez petitions for review of the BIA's denial of his motion for deferral of removal under the Convention Against Torture. The board made several errors that require reversal, but I'd like to start with a legal error the board made in holding that a government does not acquiesce in torture by gangs where the government is actively trying to combat gang activity. There are two problems with this holding that are pertinent here. First, under the BIA standard, the actions of officials at lower levels of government would seem to be irrelevant to the issue of government acquiescence, so long as officials at the policymaking levels are making some efforts to address gang violence. That's not the law. The acquiescence standard is met where public officials at any level would acquiesce in whether the government is actually effective in addressing private torture. The country could be totally controlled by gangs, and so long as the government is reorganizing the police force from time to time for doing things of that nature, the petitioner would seem to have no claim. That, again, is not the law of this circuit. The court's precedent requires examining not just whether the government made efforts to prevent private violence, but also whether those I'd like to start with the implications of the court's holding on actions by officials at lower levels of government. Can I interrupt just a minute on the second of the two legal points you made? Our case law wanders around a little bit on this question of efficacy. What if we have a case that I'm not sure this is the case, but what if we have a case where the government is making quite extraordinary efforts, but the gangs are so powerful that the government is nonetheless unsuccessful? Is that acquiescence? Your Honor, the two cases that I pointed to on that front are Madrigal and Lopez. In Madrigal, the court acknowledged that the government was making superior efforts to combat drug trafficking. It said it had made significant advances, but the BIA nevertheless heard because it failed to examine whether those efforts were effective. The other case, Lopez, again, the government demobilized guerrillas. The number of extrajudicial killings declined. There was equivocal evidence about how much better things had gotten. I think those are two cases where the court really put a lot of teeth in the requirement of government effectiveness. It had an evaluation. It was clear that the government was being effective and that progress was being made. Nevertheless, the BIA still had to weigh the evidence on both sides. Okay, yeah. Counsel, where would we draw the line here on efficacy? It's a spectrum, right? You could argue that there are parts of our own country where we aren't effectively controlling gang violence. How would we draw the line if we're going to focus on efficacy as opposed to a country's efforts, at least good faith attempts to try to control gangs as opposed to just join them? Your Honor, I agree there's got to be a line somewhere. I don't think it's the case that the government has to eliminate all gang activity or all gang violence. In that the likelihood of torture, that'd be reduced. What I'll say is I think this case is pretty clearly on one side of the line. This is a case where gangs control large parts of Honduras. The government really hasn't made any kind of measurable progress. There are sort of efforts year after year to reorganize the police force, expand the police force, fire police officers, this type of thing. The efforts haven't shown any success. The only evidence of those efforts, in fact, was put into the record by the government. The very articles the government put into the record suggests that the efforts weren't likely to make a difference. If we were to assume that on the fact of this case, irrespective of where that line might be, but on the facts of this case, that there's been acquiescence, do we remand for application of the proper standard or do we simply grant the petition and say entitlement to cat relief? Your Honor, I think this is a case where the facts were fully developed by the immigration judge and before the BIA. There's no dispute that the government's unable to control gang violence in Honduras. There also seems to be no dispute that there's significant corruption among the police forces, among the judiciary, and other levels of the Honduran government. Because the facts have been really fleshed out and, again, don't seem to be in dispute here, I do think this is a case where you could grant relief outright. Is there any dispute as to the likelihood of harm that would therefore amount to torture? No, Your Honor, the immigration judge held that my client is likely to be tortured and the BIA didn't, again, didn't dispute that. Okay. How do you distinguish the Garcia Millan case and the Del Cid case? Your Honor, Garcia Millan, I think, is distinguishable on its facts. That case, you know, the sort of central fact scenario in that case had to do with the government's inability to solve a particular crime. It's clear under circuit law that the inability to solve a crime doesn't equal government acquiescence. The court went beyond that a little bit in how that there isn't a claim where the government's generally ineffective in preventing or investigating criminal activities. I think that can be seen as an extension of that rule. And then the Del Cid case, which is the other case the BIA cited, there was a very short discussion of the government acquiescence standard. It's not entirely clear, you know, to me exactly what facts the court was basing its reasoning on, but the court did, the first case the court cited in saying the BIA was correct, was, I'm sorry, had erred, was Zeng, and then went on to cite Garcia Millan and other cases. And I think, you know, the sort of additional explanation the court gave there was dicta. Your Honors, if I might move on to the waiver issue here, I think this presents a third ground for reversal. Mr. Hernandez had a claim that he was afraid of being tortured by the Honduran government itself. The facts were developed before the IJ on that point. He made the argument, albeit in a fairly cursory fashion, but he made it before the BIA. He pointed to record evidence that supported that claim. The BIA held that he'd waived that claim and that no remand was necessary on that point. I think, again, that's another issue where the BIA erred. Did he pro se before the BIA? He did, Your Honor. He was pro se. Yeah, right. So we read his briefing to the BIA and they're like, yeah. That's right. Well, listen, you're down to two minutes. Let's hear from the government and then you've got some time. Thank you, Your Honor. I'm sorry, Your Honor. Can you hear me okay? We're doing fine. Thank you. Outstanding. I'm trying to see all the people here. Very good. May it please the court. Edward Durant on behalf of the United States government. The evidence does not compel the conclusion that Mr. Hernandez will be tortured in Honduras upon his return with the acquiescence of the Honduran government. What's your standard for acquiescence? You heard the debate that we just had as to what happens when the government tries but fails to control the gang violence. Yes, Your Honor. I would point initially to the regulation and then to this court's case law regarding private actors. But first, if you look at the regulation at 1208.18A7, it's essentially a two-part test. There's a sort of a mens rea, an awareness, a willful blindness, and that's where the Zeng case comes in from 2003. Initially, the standard with the board was willful acceptance. And this court and other courts have said, no, no, no, it's willful blindness. So you have to have someone turning a blind eye. But what's the second step? But it's neither or, it's not and. Well, Your Honor, it's a willful blindness and then a failure to act. It's having a duty or a legal responsibility and then you don't intervene. You don't intervene. And it doesn't say you intervene poorly, you just don't intervene. So what are the other cases that say it has to be efficacious? Are you saying those aren't good law in this circuit? No, there is some tension there. And I would state that a lot of these cases, particularly Madrigal, involve four police officers. And you have, definitely have an official action there. Here we're talking about purely private actors. And I would ask the court to look at the regulation for that and also Garcia and the two cases that the board cited, Andrade and Del Cid. Now, I know Petitioner has said those He and Mr. Hernandez' cases parallel each other. Both came here in the 1980s, albeit ones from Honduras and ones from El Salvador, but both career criminals. They go to prison and then they're going to go back to their respective countries and both of them fear gang violence because of their gang traitors. It's exactly the same facts. Now, Mr. Marcon had a fear of the question. Maybe it's whether that's waived, but we have an allegation of that too. True. And the government would stand by its argument that he has waived that. If you look at page 15 of the record, sir, while he was pro se, he said, initially, my claim was A and B, and then never addressed it again. Never even brought it up. Never said I disagree. I know that there's nothing to disagree with. That is to say, the IJ didn't reach it. The IJ didn't reach it, and he didn't bring it up anymore. Now, I know pro se litigants give him more slack, but the board can't expect it to be mind readers, and he didn't bring it up at all. He said, initially, and that pretends that's what it was, but that's not what it is now. In terms of the board erring there, that's not the case. But getting back to the original point with respect to acquiescence, the two cases that the board cited was Marcon and Andrade. One was from 2016, and one thought was from 2018. And they both cite Zeng. And as I said before, Zeng is that 2003 case where this court said, no, we're not talking about willful acceptance. It's blindness. And then, in particular, in Andrade, it points to the regulation that talks about a duty to intervene and then to prevent, or to prevent, and it says there was no acquiescence because of, you know, based on what is said in the regulation. So, in Andrade, I'm sorry, Your Honor. So, with the private actors, with Mr. Marcon, with Garcia Millan, with Andrade, fearing gangs, fearing crime, the government, you know, all that mattered was the language used, neither Andrade, Garcia, or Marcon. So, the efficacy... So, what do you do with the evidence? What do you do with the evidence in this case that, while the national government is taking steps, the local government that actually is on the ground is not? Indeed, maybe more than just is not, maybe whether this is themselves participating in, they are certainly corrupt and unwilling to control the gangs. So, what do you do when there's efforts at the national level, but there appears to be acquiescence, even under your definition, at the local level? Well, first of all, Your Honor, that's Andrade. There was evidence that police at the local level were taking bribes. And in this case, the immigration judge never distinguished between local or national. He spoke in terms... He said, you know, there is corruption in judges and police, but he never said local or national. And the board, in its decision, cited the evidence in the record, pointed to the findings, well, many of the findings of the immigration judge, and then to the immigration judge's finding or holding, where he said, hey, I know they're making a great effort, but they can't control gang violence. And that's just a ridiculous standard. You can never control, ever get it under control. But if you look at Honduras, if you want to go to efficacy, and they have, in 2012, and the government presented articles, they started a new police force. They have reduced the homicide rate by 30 to 40 percent since 2012, between 2012 and 2015. That's making an effort. And, you know, that's... It didn't distinguish between victims of gang violence. But, you know, it's no secret that gang violence isn't a plague there. So the Honduran government, while plagued with gang violence, and up until recently, it was the most dangerous country in the world, I think it's been overtaken by El Salvador. It's making efforts, and it's doing a good job. Well, with the facts of this case, where this is not random gang violence, this is not gang violence with respect to recruiting, this is not gang violence with respect to extortion, this is a very specific sort of gang violence. That is to say, how the gang treats people who are deserted, who have deserted the gang. Because that's a particular form of danger, and according to the evidence here, a very acute danger. It could be, Your Honor. You know, Petitioner, even though, I mean, the hold that I'm left with is that he'd somehow, after so many years in the United States, even though he's a 50-year-old male, go back to Honduras and somehow be in danger, I'm left with what the immigration judge found. The board didn't make that finding, it just bypassed it. I'm left with that. But in terms of corruption, or fear of gang violence because he's a snitch or a traitor, that's maracone. Where this court said, you know, that's all well and good, but the government efforts, there's government efforts there, it's imperfect, but these are private actors, they're private actors, and because the government's making efforts, that's enough, based on the regulation, to not show acquiescence. Now, I don't know what's going to happen, Mr. Hernandez, it's anyone's guess, I mean, I have a different view of this case, and that's not really relevant now, but he's 50 years old, he's been a career criminal here since he came in the 1980s, renounced his gang in 2008, was beaten up, and that's it. He doesn't know what's going to happen when he goes back. In fact, the only thing he said, when you look at the record in his credible fear interview, is I've heard that the government and the police are fighting military style. They're fighting military style, which shows, I think it was from 2015 that he gave this interview, that the Honduran government is fighting gangs. There is an efficacy there, if the court wants to look at it, but that's not relevant. The fact is that they're standing up. Excuse me, sir. Yes, your honor. I'm sorry. I wanted to ask you about the IJ's concern about the fact that this fellow was marked as a gang member, and that the corruption with respect of the government would make him more of a target than other people. Isn't that something that the BIA kind of overlooked? Well, your honor, Judge Schroeder, I don't think, the record doesn't show that the government said that they based its decision on the evidence found by the immigration judge, and they also cited to the immigration judge's findings, where even though the government's trying, they simply can't control gang violence. Again, that's an impossible standard, and the immigration judge never talked about at a local level at all. He's talking... No, no, I was not referring to the local level. I was referring to his tattoos and other markings of gang membership. Your honor, I think that goes to the judge's first finding that he would be found. That's right, but your time is running out, and I didn't have a chance to ask you about it before, so I'm going to ask you about it now. I do apologize, your honor. That's the first finding that was sort of bypassed, well, it was bypassed by the board. They just went on to acquiesce, not whether somehow he'd be fined. Now, again, the government doesn't agree with that, but that's not before the court now. If the court were to remand, it would be fair, all's fair in love and war, to discuss that again, because I think the board just sort of said, well, we don't need that because acquiescence is so weak. Anyway, that's my time, your honor. I do apologize for going over. I've got one question before you quit, which is onto your last point, which is what do we do with the fact that the IJ has made a Do we have to send it back to the BIA for them to do that, even though they didn't upset the finding of the IJ? Which finding are you speaking about, your honor? Well, the question of the danger to him. Yeah. I'm not, I'm not clear what, I'm sorry, your honor. See, the BIA, excuse me, the IJ found that there was sufficient danger to him to constitute torture. And then the IJ also said, and there's acquiescence. Yes, sir. The BIA did not touch the question as to whether or not there was sufficient danger. Do we have to send it back to give the BIA a chance to address the question it decided it didn't want to touch? Or can we simply say, well, the BIA, the IJ decided that the BIA left it intact and therefore we can reach the question. Well, if this court finds, respectfully, your honor, that there has been acquiescence, it's fair to send it back to the board because they bypassed it. They didn't address it. They just assumed the immigration judge's finding, and that would be fair for the board to address it. But if this court finds that there has not been acquiescence, then it does not need to. I'm sorry, it does not need to what? It does not need to remand to the board. If this court finds that there is no acquiescence as defined by the regulation in Garcia, Milan, and Andrad, then it need not remand to the board. However, if this court does find that there has been acquiescence, it should remand to look at that issue as well. Yes, sir. Thank you so much for your time. Thank you, your honor. Just a couple of quick points I'd like to make here. On the likelihood of torture point, the facts were fully developed before the IJ. Mr. Hernandez has markings, he has tattoos. The IJ found that he'd be identified as a gang member based on those markings, based on other factors related to his appearance. He was also, the gangs that he was in were affiliated with sort of a larger gang group that includes MS-13 and other gangs in Honduras. Again, the record was well developed on that point. The BIA decided not to reverse on that point. And I think, you know, to send it back to the BIA at this point to have them take another shot at that and revisit it, you know, I think really they've already looked at that evidence. They didn't make a decision on that evidence. That's right. They assumed what the IJ found. That's correct. But, you know, again, the evidence was before them. They decided not to address that. I don't mean to beat a dead horse, but on that point, did the BIA say, we agree and we're moving on to this other issue, or did the BIA just say, don't need to talk about that because we plan the case to be resolved on this other issue. We're only allowed to review the BIA's reasoning that it gave, right? We can't create different reasoning it didn't give us. Thank you, Your Honor. That's right. I didn't mean to insinuate that the BIA made a finding on likelihood of torture. It assumed that you would be tortured based on what the IJ found and moved on to acquiescence. That's right. Is your client currently incarcerated? He is, Your Honor. How long has he been incarcerated? He's been incarcerated since 1997. 1997? That's right. But he's no longer, he's not, he's incarcerated on his criminal sentences or you're now detained by the federal government? No, Your Honor. His criminal sentence is run. He's only detained by the federal government pursuant to these immigration proceedings. Yeah, so he's detained by ICE. How long has he been detained by ICE? About two and a half years, Your Honor. So if we send it back, he's going to be detained for another however long it takes. Is that right? That's my fear, Your Honor. That's right. Well, I want the government to hear this. I'm not sure I want a response, or what I'm going to do with it. Detaining people like this in COVID times is itself, it's, I mean, there's an additional danger going on with detention that's beyond the normal sort of difficulties or inconvenience or whatever it is. This is a very long detention. Has the government, do we have any motion for sort of release on bail or during the continuation of these proceedings? Do we know anything about that? No, Your Honor. I don't know anything about that. Your Honor. Go ahead. Excuse me, Mr. Durant. He has, I don't know. You just said you don't know anything about it one way or the other. No, sir. I don't know if he's filed a habeas, independent habeas. I think he has, but I don't recall. I'm not certain, Your Honor. I'm sorry. That's right, Your Honor. He's, he has filed a habeas petition. That was declined. He's also filed a request for release that was declined. Okay. Got it. Okay. That's obviously not in front of us. Okay. Okay. Thank both sides for their argument. And before we quit, I would like to thank Mr. Howell on behalf of the court. I know that you're doing this pro bono. We very much appreciate your doing this. You did excellent work in this case. And we thank you very much. I will say that Mr. Durant, the government lawyer, you've also done excellent work, but I want to thank you in the same way because you're getting paid. But thank you as well. Thank you very much, Your Honor. Okay. Thanks. It's an absolute pleasure, Your Honor. Thank you. Hernandez versus Durant, Hernandez versus Barr is now submitted for decision. Thank you.
judges: Schroeder, W. Fletcher, Hunsaker